Pharmaceutical Co Ltd, et al, number 15-3289. Mr. Landau, is it Royal or Royale? Royal. Royal, okay. Thank you. Mr. Landau, is it Royal or Royale? Good afternoon, your honors. May it please the court, my name is Brent Landau. I represent the appellant of a drug company. May I reserve three minutes for rebuttal, please? Sure. Where do you want to start? I'd like to start with a general point, your honor, that this case is about something that happens regularly in cases around the country. A drug company is alleged to have violated the antitrust laws, and a directly purchasing wholesaler assigns its claim to sue the manufacturer to its own customer. That's the merits. Yes. But isn't the place to start is, are we under the right section of Rule 12? So the district court dismissed under Rule 12e1, the plaintiff based its standing on its assignment from the direct purchaser. There may have been other arguments we could have made, ways to establish standing, but our standing is based on that assignment. We're suing in the shoes of the direct purchaser. So the issue does go to our standing. We say it should have been... Yeah, but the question, when you say it goes to our standing, the question is, since that word can have more than one meaning, does it go to standing in the constitutional Article 3 sense, or does it go to standing in the sense of antitrust standing? And the amici have argued, it's antitrust standing, it's not Article 3 standing. Are you of the view that the amicuses, the amici here, are wrong? It's our position, Your Honor, that in this case, given what we allege, it's both. That because we've based our standing on our assignment and not on our status as an indirect purchaser, that the way that we establish constitutional standing is through the assignment. So we're comfortable with it being 12b-1, but it should have been considered as a facial attack on jurisdiction, not a factual one. I mean, Judge Jordan's decision in a case called Ethelfarm says that if you're talking about antitrust standing, it doesn't affect subject matter jurisdiction for purposes of Article 3. In other words, it's not 12b-1, it's got to be something else. And that something else could only be 12b-6, right? Right. This could also have been looked at under 12b-6 for failure to state a claim. Wouldn't it have been better to, in light of Ethelfarm, in light of Lexmark, to have argued at the very least in the alternative, if it's not 12b-1, it's 12b-6? Well, I believe that the defendant below did argue that under either 12b-1 or 12b-6, the language of the assignment of the contract could be considered. But you, Hartig, why didn't you, especially after the amici pointed out, hey, this is really a merits argument, it's not a constitutional standing argument, why did not you join in that argument or make the argument? Is it because you think it's wrong? Well, I think, depending on the allegations, it could be correct. An indirect purchaser can have various ways to assert constitutional standing that it would have a redressable injury. It's true that what we've alleged in our complaint is injury by virtue of standing in the shoes of a direct purchaser. So that's the argument that we made below. It's consistent with what we're saying here. This direct purchaser versus indirect purchaser issue is an Illinois BRIC distinction. I'm not a big lover of this court's in-bank decision in Sullivan, but it is what it is. And this court said in bank in Sullivan that that question is a question of antitrust standing, a merits question, not a constitutional standing question. Isn't that what we said in Sullivan? Yes, Your Honor, and it is a question that goes to that. So if that's the case, then I'm candidly a little mystified about why you seem to be defending the defendant's position here, which is, oh no, this must be Article III standing. What's in it for Harding Drug to take that position? Well, I don't mean to argue against my own position, Your Honor, but I do think it's appropriate to consider the language of the agreement between Allergan and Amerisource at the outset of litigation, whether that's under 12b-6 or a 12b-1 facial challenge. I think it's important to get to that issue quickly. What language could possibly be in there that would make this into a subject matter issue? That is subject matter jurisdiction under Article III. Are you saying that there's some wording that could have been in there that would have converted this from a direct versus indirect purchaser question, which is, according to Sullivan and Bank, a merits antitrust standing issue, not an Article III standing issue, and have turned it into an Article III standing issue? Is there some way they could have said it in the language of the contract between them that would have made that transmogrification? No, Your Honor, I don't think it turns in the language of the contract. You know, I must be out of it, maybe because I'm 40 miles away, but I didn't think this case was that complicated, because you had a contract that said that you couldn't assign the rights under the contract, and what they assigned was rights created by the Congress of the United States and the Sherman Act. And therefore, Illinois BRIC was not involved. Judge Greenberg, I agree with that to the extent that the contract bars assignment of rights at all, and it actually doesn't say that it does, but the only mention of rights is rights under the agreement. Right, under the agreement, but what was assigned were not rights under the agreement. That's correct, Your Honor, it was not, and most courts that have looked at this issue in the context of assignment of antitrust claims have come to exactly that conclusion. So if that's true, then it's a simple case. And that... Well, that's okay, we can make it complicated. And that helps you. Yes. The question that you have is, what helps you? Is it a 12b-1 issue, or is it a 12b-6 issue? I think it could be either, Your Honor. Not anymore. It has to be 12b-6. I'll take that, Your Honor. If you agree with what I said, it's clearly 12b-6. And my only question is a procedural question. Did you allege 12b-6? Did you argue 12b-6? When we responded to this argument, which is one of many arguments the defendants made to dismiss the complaint, they posed it as one that could be 12b-1 or, in the alternative, 12b-6. What message did you argue on appeal? We argued on appeal, again, that the substance of the argument, that the contractual language doesn't prohibit the assignment that we made. There was an issue about whether ---- Is there any 12b-6 argument in your briefing? I think we have a mention in our reply brief that if it's a 12b-6 issue, then we wouldn't have gotten into issues that go beyond the pleadings in any event. Then the problem you have, if it should be ---- Is your Davis opinion out? Yeah. I mean, Mr. Jordan just had an opinion that came out in a case called Davis that goes into this and lays out pretty clearly. Are you familiar with the Davis opinion? Yes, Your Honor. And that says that antitrust standing is a 12b-6 issue. So that's now the law of this circuit. I understand. I do not doubt it. And so if it's a 12b-6 issue, then the question becomes, have you argued 12b-6? And even if you did argue 12b-6, is anything further needed in order to make a 12b-6 argument? I don't think that anything further is needed to make a 12b-6 argument. We're responding to a motion to dismiss. The court granted the motion finding that it had no subject matter jurisdiction. If there were instead a 12b-6 argument as opposed to a 12b-1, we would have made the same arguments that we made. The only significance would have been ---- Would the district court need to see the distribution services agreement to be sure that it's either in play or not in play? The district court could conceivably have looked to that agreement as something outside the pleadings but irrelevant to that. How could it have done that if it was a 12b-6 case? That's right. This is a distinction with a difference. This isn't angels dancing on the head of a pin, Mr. Landau. On a 12b-1 factual challenge to subject matter jurisdiction, there's no presumption of truthfulness associated with your complaint or anything else you're putting forward, and the court is free to go beyond the allegations of a complaint. Under a 12b-6, you have the benefit of the presumption of truthfulness of your allegations, and the court is required to stay within the bounds of your complaint except for very limited categories of documents which this agreement is not one. It is a contract or an agreement that is not attached to the complaint or relied on in the complaint in a way perhaps it would bring it in. So it's a distinction with a difference, right? Well, it may or may not be, Your Honor. The reason I say that is because there hasn't been an answer yet. The facts haven't been controverted. This court's precedents would say that a factual challenge is premature at this point. So at most what we would be talking about would be a facial challenge, and the distinction between a facial challenge and a failure state of claim challenge is not so great. The court didn't treat it as a facial challenge. The court treated it as a factual challenge, right? Relying on information outside of the then very limited record which consisted of your complaint and made a ruling. Well, the only facts outside the plea were the language of the contract itself, which was not in dispute, and we don't object to the court considering the contract, whether it's 12b-6 or otherwise, on this motion because it is sensible and efficient to resolve an issue like this at the outset of the litigation. So even were this exclusively a 12b-6 motion dismissed for failure to state a claim and the defendant sought to put before the court this agreement under 12b-6, we wouldn't have objected to that. I want to just say a word because I think however we frame it, what really is important, given where we are, is the language of the contract. As Judge Greenberg said, the contract doesn't prohibit assignment of antitrust or any causes of action. In fact, the agreement doesn't prohibit assignment of rights at all. It has a prohibition on assignment of the agreement. The agreement doesn't prohibit, and that's a statement that you're making, and we're under 12b-6, doesn't the agreement need to be in the record before the court? Yes, it would. It would. And it's not? Well, it's in the record as it currently exists. The defendants filed it and put it in the record, and they could have attempted to do that under 12b-6 as well. I want to say also that assuming that we're looking at that, obviously if we're not looking at the contract, if it's not in the record, then the court's dismissal should be reversed because we shouldn't have. The 12b-6 is a dismissal based on the complaint. It doesn't state a claim upon which relief can be granted. Correct. And the complaint doesn't attach the distribution services agreement or in any way really bring it into play. Is that correct? That is correct. So you're really talking about Rule 56 as opposed to 12b-6, aren't you? Well, I don't mean to talk about Rule 56, but the point is that no. Is there an exception under 12b-6 that allows this to be brought into play in order to say that this is now in the record and you can consider this under 12b-6 on a motion to dismiss? There are various arguments and justifications that courts have at their disposal to consider matters outside of the U.S. Name one that doesn't convert it into Rule 56 by the terms of 12b-6. Well, if, for example, this court in the Warren General Hospital v. Amgen case did look at the distribution agreements between the manufacturer and the distributor in ruling on a 12b-6 motion, the defendants had made that argument as well for why it ought to be considered. Obviously, if it wasn't properly considered, then the case shouldn't have been dismissed, but because the agreement doesn't prohibit the assignment that was made, then it's appropriate for the decision to be made. You say it's appropriate. I guess what you're saying, and correct me if I'm wrong, is from your position, you didn't care whether the court rendered a summary judgment against you. Because if you acknowledge that it couldn't be 12b-1 and it had to be under 12b-6, and if you acknowledge that the DSA, the distribution services agreement, was not a part of your complaint and wasn't in some fashion incorporated in the record at that point, then you're agreeing that something outside the record was being considered by the court on submission from the defendant, and that, by definition, is a summary judgment motion, isn't it? Well, if there was a disputed fact, then it could be. There's no dispute about the contractual language. So we didn't object to that contract coming in. To go back to his question, based on the complaint, which does not bring into the four corners of the complaint distribution services agreement, you say you win. But if you, as you said before, need to show that that distribution services agreement is X or is Y, it sounds like it is in play, and yet it's not in the record in the district court, in the complaint. We're talking procedure here. That's right. And we're somewhat hamstrung by it. I'm not saying on the merits you don't win, just as Judge Greenberg said. But how do I get to the right provision of the federal rules of civil procedure, and if I get to the right provision, which has to be 12b-6, how do I consider the distribution services agreement? And if you do, we all agree, or at least I agree, personally, with what Judge Greenberg said. Your Honor, the only response I would have to that is that if this were framed solely as a 12b-6 motion and the defendant argued we ought to bring in this contract because it's integral to your case, even though you don't cite it in the complaint, it would have been for us to object to that consideration or not. And if we didn't object under 12b-6 and the court looked outside the pleading and decided the motion under 12b-6, it could have done that if we didn't object to it. And we don't have any problem with the court looking at this contract at the beginning of the litigation. The trouble you have is that your antitrust claims are not based on the distribution services agreement by definition. That's correct. That's one reason why. That's why they really weren't part of the complaint. That's true. So when you say these are integral to the complaint, they're not integral to the complaint. I guess I'm struggling with that a little bit. No. What it sounds like you're saying is we're happy to go to the merits. We're very happy to go to the merits and we're happy to have this be part of the merits discussion. That's where you come out, right? Well, that's right, Your Honor. But when the defendants put this in the record before the district court, one thing they said is that it could get under 12b-1. But they also said if it's 12b-6, it can get in anyway. And we didn't object to that. All right. Why don't we give more questions? Thank you. Let's hear from Mr. Royal. Good afternoon. May it please the Court. My name is Sean Royal. I represent Appellee Allergan, and I'm also arguing today for the other appellees, Sinju and Quirin. Allergan contracted with Amerisource to distribute these drugs, I-1 and I-max, under an agreement, the DSA, that prohibited assignments without consent. The issue that we have here is that Harding seeks to bring a direct purchaser class action solely by virtue of a purported assignment from Amerisource that Allergan never consented to. Right. I think we're all on top of that, Mr. Royal. So go explain to us why Ethafarm and Sullivan and Justice Scalia's comments and Lexmark about the character of antitrust standing versus Article III standing don't mean that this is not a question of subject matter jurisdiction, but rather a question of statutory prudential standing, that is, antitrust standing. A merits question. I think it's very clear. This is an Article III standing issue. We have a party here that has no basis to sue under the Federal Uniform Status. How do you get around Ethafarm? It's claiming an injury. It doesn't help me to hear you say this is very clear. Ethafarm says standing is a threshold requirement in all actions of federal court. We recognize that, right? We said that. But then we said constitutional standing is augmented by consideration of prudential limitations. For plaintiffs sued under federal antitrust laws, one of the prudential limitations is the requirement of antitrust standing. It does not affect the subject matter jurisdiction of the court as Article III standing does, but prevents a plaintiff from recovering under the antitrust laws. We said in abiding presidential opinion, antitrust standing is not Article III standing. And that's a 707, page 232. We did not in our motion, first of all, it is incorrect. We did not move an alternative under 12b-6. We moved under 12b-1, which is correct under this. In fact, Judge Jordan, you authored the decision on citing Constitution Party. It says a motion to dismiss for want of standing, which is what we filed, properly brought, is properly brought pursuant to 12b-1 because standing is a jurisdictional matter. Of course it is. That's constitutional standing. Equivocal words are a challenge. I understand that. But the word standing here, I wish there was a better word to be using, but there's constitutional standing under Article III, and there's antitrust standing, which is not Article III. At the farm, it's clear as a bell that antitrust standing is not constitutional standing, and we're bound by that. One's mandatory and the other's prudential. We did not raise an antitrust standing argument. Antitrust standing goes to the question, as you say, it's a prudential limitation on standing. Illinois brick is a form of antitrust standing. When you say we didn't raise it, your whole argument was about direct versus indirect purchasers. No, no, I disagree with that. Our argument was about this plaintiff is coming into this court seeking to bring a direct purchaser case. He just admitted on the record they have no standing. Their basis for asserting injury is a purported assignment. And if that's invalid, they have no injury. Mr. Royal, the only reason why there's an assignment is because they think they need it, and maybe they do because of Illinois brick. Indirect versus direct purchasers. That's the only reason why they think they needed that assignment, and that's the basis of your argument, isn't it? That they're an indirect purchaser and not a direct purchaser, and therefore their assignment is they don't have standing because as an indirect purchaser they can't sue? Isn't that your argument on the merits? Because if it's not, then I really do have to pack it in. I'm completely mystified. I thought that was your argument. We did not reach the merits, Your Honor. We did not need to reach the merits. We raised a question solely about the constitutional Article 3 question, whether this party has an injury. Article 3 constitutional standing argument depends upon, absolutely depends upon, them being indirect versus direct purchasers, right? No, Your Honor, it doesn't. Because if you look at the complaint, the complaint does not allege injury to indirect purchasers. It does not allege an indirect purchaser class action. It alleges only one type of injury, a direct purchaser injury, which they are unable to get because of the assignment. They're not disagreeing. If they don't have an assignment, they don't have that injury. Yeah, exactly. So true, so true, Mr. Royal. But the only reason the argument is in play here at all is because if they're indirect purchasers, you're saying they can't sue, right? If they don't have direct purchasers standing to sue, they have no standing at all. What you're suggesting is that what was being done here by the assignment is an end-around that can't be allowed per Illinois BRIC. That's the argument, right? I would understand where I understand your argument. Tell me what your argument is as to exactly why there isn't standing here. There is no standing because we have a complaint. A complaint alleges injury. It alleges injury to direct purchasers. They are not a direct purchaser. They are seeking to stand in the shoes. So what are they? They're an indirect purchaser, but they did not file an indirect purchaser complaint. If they did, we would have challenged it under 12B-6 because that would be a merits issue. They didn't allege any injury to indirect purchasers. They filed a complaint solely alleging direct injury, but they're not a direct purchaser. The question is direct versus indirect purchasers, right? No, it's not because the complaint says nothing about it. What did you just say? I am just lost. The complaint does not say anything about indirect purchasers. I know it doesn't say it, but you've made your arguments. Your argument is they're a direct purchaser. They're making a claim as a direct purchaser, but they can only get there through an assignment, and the assignment is no good. Isn't that your argument? That is the argument, but it starts with the complaint, which does not allege. If they had come into federal court and said, we want to file an indirect purchaser claim, then we would have filed a 12B-6 and followed the same reasoning that we would have brought in an antitrust standing argument and challenged that. That's not what they did. They filed only a direct purchaser complaint, and then the only basis they have, as he acknowledged, the only basis they have to even purport to claim direct purchaser injury is by a purported assignment, and because that's not a valid assignment, because of the effect of the DSA, they have no injury. So are we speaking past each other here? I guess we must be, because we've now said to each other, by my count, five times that in some form of words or another, that if they're direct purchasers, maybe they could make this case, but since they're not direct purchasers and the assignment is no good, they're indirect purchasers and they can't make this case. In other words, the standing argument rises and falls on the question of direct versus indirect purchasers. Actually, Your Honor, I believe that Illinois BRIC need not have even been mentioned in a district court's decision. I do not think Illinois BRIC is critical to the conversation in this case at all. How is it not critical if the whole argument you've made and made repeatedly in your briefing and here today is direct purchasers, they are not. Indirect purchasers, that's all they are. So the question is direct purchasers versus indirect purchasers, and that is Illinois BRIC. That argument has been made and the district court did refer to that as a matter of clarity, but my point is the Illinois BRIC doctrine need not even come into play in this matter at all because they never alleged in their complaint an indirect purchaser case or indirect purchaser injury. Because they're not trying to make that case. They're not saying it. They're trying to get around it. They're trying to get around it. They're not reporting to be indirect purchasers. Why does it matter what Illinois BRIC says or whether indirect purchasers have standing if they never even alleged an indirect purchaser injury? They will not allege an indirect purchaser. They will allege that they got assigned a direct purchaser. That's the argument, right? Just stop that. Yes, they do allege injury as direct purchasers, which they are not, and they can only allege that. And you're saying they are not. And since they are not, they must be indirect purchasers. Therefore, you win because Illinois BRIC aids you, correct? They could be pygmies. They could be anything. What they're not is direct purchasers, and they do not have standing to assert the claims. Under what law? Under what law? It doesn't matter. What's the hook that allows you to say that? What is the case that says that only direct purchasers can sue? Well, I would start with a more basic principle. Just help me with that. What's the case that makes this distinction and says if you're not a direct purchaser, you can't sue? What's the case? Illinois BRIC says that. Yeah, it sure does. But you don't even have to go to that legal principle because they only allege direct purchaser injury. Okay. But that's because they're taking it as an assignment from Hartig, which is a direct purchaser. Correct. That's a direct purchaser injury, isn't it? That's the basis on which they purport to have the injury defined by the complaint that they want to sue on is based on the purported assignment. Well, why can't at this stage of a litigation, why can't they make that argument successfully? If they had a valid assignment, there would be no issue about them bringing it to the district. Well, why is the assignment invalid? The assignment is invalid because it's prohibited by the DSA. What was prohibited was an assignment of the contract. What was it? Prohibitive of any rights or obligations under the DSA. Well, that's not what they're doing. As Judge Greenberg said before, if this is a right that's not under the DSA but one conferred by Congress, we're talking about a very different issue. There are two steps to the district court's logic. One is the court requests the DSA to extend to rights, and even hardly acknowledge and admit that in their opening brief that the DSA extends to rights. My point is what if we disagree with you? What if we say that all that they got assigned was a congressionally mandated or allowed right to sue in certain circumstances and the DSA is not involved, it's not a right under the DSA, it's a right given by Congress. Assume that for the moment. Yes. If a right is given by Congress, then the person who has that right could assign it to me. Could that person not do so? Under the DSA... I just said assume you lose under the DSA. Assume it's a right given by Congress. If that person assigns it to me, is that okay? What I'm saying is the assumption you're asking me to make, Judge Ambrose, does not mean that I lose under the DSA and we can obviously stipulate it's a statutory right. Without conceding anything, literally nothing, you're not conceding this is or isn't under the DSA. Just assume for the moment that the DSA isn't in play, this is not a right under the DSA. Even though you disagree with it, assume it. Assume it's a congressional right. Assume it's assigned to me. What bars me from continuing on with this suit? In this case, a contract. Well, what you're assuming is the contract goes your way. Maybe somebody else thinks it doesn't. I'm not assuming it goes my way. I'm just saying assume that the contract doesn't go your way. Don't believe me. You are not conceding that. I'm just assuming. What I understand you to ask me is to assume, and I understand it, that this is not a right arising under the contract. It is a statutory right. That that is the right to bring an antitrust claim. That's what I understand you to be asking me to assume. Yes, I'm assuming. It doesn't arise under the contract. This is my hypothetical to you. Yes. There is a right given by contract or by Congress. Yes. And it's not given by contract. It's assigned to me. What bars me from continuing with that suit? In a case where there is an anti-assignment provision, it doesn't matter whether the right that's being assigned arises from statute or from the contract. The ERISA cases are a good example, if I could just take that analogy. The ERISA claims obviously arise under statute, as antitrust claims do. But there are many decisions in this circuit that enforce anti-assignment provisions to prohibit assignment of ERISA statutory claims. Where does that provision come from? The statute? The basis to bar the assignment of the statutory claim comes from a contract which is given. If the contract says, it's the wording of the contract that matters, right, Mr. Wright? Right. Yes, absolutely. So if there's an anti-assignment clause that says you may not assign any rights under this contract, nor may you assign any other rights or privileges that you have from whatever source that may arise, then that would bar the assignment of a right that would arise from a statute, correct? Some public policy might prevent it. But the wording here doesn't have any words like that. What the wording here says, this agreement may not be assigned by either party without written consent of the other party. And then it goes on and says, notwithstanding the foregoing, either party may assign its rights and obligations here under in certain circumstances. So when I look at the anti-assignment clause, it looks to me like what's being forbidden as an assignment is the rights associated with this agreement. Not with something else, but with this agreement. Now, this is just a matter of English language. How do you get from this agreement to all rights and privileges which you may have from whatever source they may arise? Because that's really what you're arguing here is, even if it's not covered in the DSA, this DSA anti-assignment provision still prevents the assignment of the antitrust litigation right to the extent that one exists at all. I don't believe I'm making an argument quite as broad as what you suggest. What you said earlier I entirely agree with, which is the language is what matters. And the district court, having determined first that the anti-assignment clause extended to rights, then looked at the DSA as a whole and interpreted the DSA as a whole, such that there was a nexus here between the type of claim being brought, which is a claim challenging allegance pricing, and said there's a nexus here that the court believed that the parties must have intended that rights would be broad enough to include the right to assign an antitrust claim relating to pricing. The district court may have said that, but of course we're looking at legal language here, right? And our review is plenary, right? I disagree, Your Honor. I believe it's very clear in this circuit's law that when district courts interpret a contract terms, contract terms drawing upon the language of the contract documents, such contract interpretation is a question of fact to be reviewed for clear error. Harkins v. Waldinger, rail construction, both cases say the same thing. And they draw the distinction between interpretation of contract terms and construction of those terms in terms of determining their legal effect. This district court did both things. But in interpreting the term rights to extend to causes of action, not any antitrust cause of action, but the particular type of cause of action here that challenged allegance pricing, as they admit in their briefing, is governed by the DSA. But isn't the question, though, of interpretation and construction, the question of how the case gets to the court of appeals. It's one thing if there's a trial in a district court and a district judge makes a non-jury trial saying a district judge makes an interpretation as a factual finding. But we have here a case that was decided on motion. And don't we exercise a prior review? No. No, Your Honor. We don't exercise. A 12B1, what we had here was a 12B1 factual attack, which was proper under this court's precedence. No, we're telling you that it should have been 12B6. I understand what the court is saying. I disagree because we were not making a merits argument. We were not raising antitrust standing. Rebecca, what case of this court says to you this is a 12B1 offense? I mentioned Constitution Party. Constitution Party has nothing to do with antitrust, and it has nothing to do with direct and indirect purchasers, so I'm not sure how that advances your cause. Again, our motion attacked the standing here because there was no basis to assert the injury. Just a refreshment. This goes back to Illinois BRIC. Was standing in Illinois BRIC a 12B1 or a 12B6 issue? I can't say for certain. I believe that would have been a 12B6 issue, as I said. And then you have Ethelfarm, which in effect follows that. You then have Lexmark, and you have the Davis opinion coming down recently, which says be very careful because there are significant differences between 12B1 and 12B6. The burden is on different parties. If you make a 12B1 argument, the burden is on them. 12B6, the burden is on you. And so that's just one of the significant differences. And so Illinois BRIC is 12B6, and you're saying that somebody is trying to do an end-around indirect purchaser because you believe it comes under the agreement, then shouldn't your defense have been 12B6? I didn't say they were trying to do an end-around indirect purchaser. I said they brought a complaint that only asserted direct purchaser injury, and I would submit that in each of the cases that you're referring to. So you're saying there was no direct purchaser injury? Not in this case. And in the cases, I believe, that you're referring to that raise the Illinois BRIC issue, there must have been an indirect purchaser injury. That sounds like you've gone straight to the merits. I'm not going to the merits. I don't need to get to the merits because I have a fundamental constitutional question of, did the party before the court suffer, quote, in their own authority, a palpable injury to himself? And because they own that, that's worth the Selden, which is one of their cases. It's a U.S. Supreme Court case. They do not allege an injury in their complaint to themselves because they only allege direct purchaser injury and by their admission they're not a direct purchaser. But the predicate is can you assign an antitrust claim to a third party? You're saying they cannot assign this antitrust claim to a third party because of the distribution services agreement. They say we're not relying on the distribution services agreement and that the interpretation given to the word rights by the district court was in error. If that's correct, then should you not have made a 12B6 argument? Or at the very least, if you really want to cling to this 12B1 point, it's 12B1 and in the alternative, Your Honor, it's 12B6. I'll say 12B1 tactically because I want the burden to be on them, but if not, if the burden is on us, we still win. We did not in the alternative file under 12B6. Nor do I believe that would have been appropriate given the nature of the argument and the nature of the case alleged. Only direct purchaser injury was alleged and they did not have a direct purchaser injury. But if somebody said to you, you might not be here today if you made a 12B6 argument and had the distribution services agreement brought into play. If the court had, we didn't ask the court to look at this under 12B6, but if it had, it could have taken the DSA into account. Under this court's authority, the In Re Burlington Coat Factory, it's a document integral to a plaintiff's claims is properly considered on a motion for a 12B6 motion. Again, we didn't bring a 12B6 motion. This court's own precedent suggests that subject matter jurisdiction should be challenged under 12B1, and in this case, you could have a facial or factual attack. In this case, it was a properly factual attack. If we're telling you that we disagree with you that it is not subject matter jurisdiction, rather it goes to the merits. It's antitrust standing as opposed to Article III standing. If we say that, then where are you? You can't say you disagree, because if you disagree, it's still loose. So if we say that, where are you? If the court would like to reach the merits and say there's not a proper assignment, so they can't sue as a direct purchaser, and we're going to reach the merits and say they can't sue as an indirect purchaser either and consider that under 12B6, I don't think that's necessary, but I don't see harm if the court would like to go beyond the arguments that are needed to affirm the district court. But I don't think you need to reach an indirect purchaser case in a case where the complaint itself doesn't allege any indirect purchaser injury. That's correct. They did it for a purpose. If you were in their position, you would do exactly the same thing. Yes, but I don't see why the court needs to reach an issue, because it has to do with what you presume was the intent for the plaintiff to allege the complaint that it did. If we're saying to you that we disagree with you with regard to your interpretation of the word rights under the distribution services agreement, we disagree. Yes. Then what do you do? As I said, ultimately I agree with Judge Jordan.  What's your hook then if we say that? What do you do? Is it 12B1, 12B6, Rule 56? What is it? We've never contested that a party may assign a direct purchaser claim to an indirect purchaser. We don't contest that. That can be done where there's a valid assignment. Here there was not a valid assignment for reasons addressed in our briefs, which I'm happy to address in greater detail. If there were a valid assignment, we would not have a basis to argue for dismissal. And the assignment is not valid because? The assignment is not valid because, with all respect, the DSA prohibits it. I just said, assume that we disagree with you on that. Yes. Our argument hinges on the judge's interpretation of the DSA, which is a fact-finding. I understood. Assume we disagree with the judge on that. Yes. Just assume it. Then where are you? At that point, if you disagree with the judge, if you disagree that the DSA properly interpret, even properly giving clear error review. Assume we disagree. Yes. Then if you disagree, then you disagree, and our argument fails. I submit, and I have more to say on this, but I submit that that would be an error for the court to have that outcome, especially in a situation where we have a binding contract that has language that was reviewed, the court properly took into account the DSA, and it engaged in contract interpretation, which this court's precedents say is subject to clear error review. And it did so taking into account other language in the DSA. She didn't say that any antitrust cause of action would have fallen within the anti-assignment provision. She said that a cause of action in this context attacking pricing, a subject matter that is governed by the DSA itself, and doing so where there are provisions that require compliance with federal law. The court said that she interpreted in those circumstances that the term rights was broad enough to extend to causes of action. In other courts in this circuit, many other courts, in their RISA context, admittedly, but I don't see a difference, they're engaging in the same type of reasoning. Other courts have said that where you have a contract that extends to prohibiting rights, it would strain the plain meaning of that contract not to also prohibit causes of action relating to the same contractual relationship. And Judge Robinson followed that reasoning, and that reasoning also has been adopted in other courts in this circuit, and it's reasoning that's reflected in the City of Hope case and the RISA case, but we're relying on it because of the contractual interpretation principles that exist in that case and in many other cases. The judge was reasonable to do what she did, and it was proper for her to look to the other provisions in the DSA to try to discern the meaning of these contract terms. If they had evidence or some basis to argue that the term should have different meaning, they could have submitted some proof. There's another issue, though, that if I could raise, which is that they have failed. They filed a complaint more than two years ago, and they have failed to present any evidence to support that they even have an assignment, and we did properly challenge that. We have controverted the existence of an assignment, and they have never responded. That would certainly be in the nature of something, I guess, hmm. Did you ever challenge the validity of the assignment? Yes, we absolutely did. Where? The sequence was that we filed a 12D1 factual attack challenging the validity of any assignment in response. But that the assignment didn't exist. We challenged the validity of any assignment in response. Did you challenge that? Yes, we did that in our reply. That factually this assignment doesn't exist. They're just making it up. We absolutely said that very clearly, and by the way, not in a footnote, in text plus in a footnote, and we said there needs to be some proof here because they're relying on the text of a purported assignment. They're making, in response to our motion,  what it did and did not include. We have no proof of that. In our reply, we came back and we said where is the proof of this supposed assignment because the court needs this to scrutinize the allegations that are being made here to oppose dismissal. They had nine months. We raised that in our reply brief. Nine months intervened after we raised those arguments very clearly in our reply brief below in the court's ruling. Did the district court say anything that indicated it thought the assignment didn't exist? The district court did not reach this issue, but this court can affirm on any ground and find support in the record. Your reply brief in support of your motion to dismiss on Essay 12 says, and it's the only thing we could find, here, by contrast, Hardik has submitted no evidence whatsoever of the assignment on which it purports to rely. That's it. You know, this isn't a game. We ought to ask the appellant's lawyer on rebuttal whether or not there's an assignment. I mean, this is something a little funny about this whole discussion. I mean, there's either a written assignment or there isn't. Exactly. We said on page 8 of our reply brief below that they had submitted no evidence whatsoever of the assignment on which they purport to rely. That's right. We say dismissal is warranted on this basis alone. And then we have a footnote citing authority where cases have been dismissed for failure to prove the assignment. That's in your reply. It is in the reply. And usually if it's in your reply, it's waived. But anyway, why don't we hear from Mr. Randaust whether there is or isn't? What I was seeking to explain was that we raised it in a timely way because we were responding to their specific reliance on the assignment and assertions about the scope of the assignment in their opposition. Okay. Thank you, Your Honor. Mr. Randaust, is there an assignment? Yes, Your Honor. There is an assignment, and we alleged it in detail in our complaint. The reason we never submitted the document itself is because this issue wasn't even raised until the reply. The district court never asked us to do it. We certainly could do it if the district court thought that to assure itself of proceeding in the case, it needed to see it. That's the procedure that's set out by this court's precedents, by the Supreme Court. They never controverted the existence of the assignment. Is the assignment part of the record on appeal? It's not. It's not, but our allegations about the assignment are. And we allege in detail and express assignment of these claims. And because under the Gould case and the International Association of Machinists case. Do you have any problem with just supplying us a copy of the assignment to supplement the record? No, Your Honor. We'd be happy to do that. Okay. If you would, please. Yes, Your Honor. All right. I want to say also this is only an issue if we consider this as a 12B1 issue and not a 12B6, because whether it's a facial or factual attack, I did want to point out that factual attacks pre-answer are not appropriate. So even if it was a 12B1 issue, it was a facial attack under the Mortenson case and up through the Constitution Party case. That's been the holdings of this court. If I could just respond briefly on a few other points, this court's review is plenary. It's de novo review. The RAM construction case makes that clear. What the court did here was contract construction. It didn't make any factual findings. It only looked at the language of the DSA itself. The ERISA cases are different from this because ERISA preempts any state law breach of contract claim. So if you're a planned participant in an ERISA case and you want to sue for benefits that are due to you under the contract, you have to bring an ERISA claim. And the ERISA cases all involve, which are district court cases in this circuit, all involved clauses of the plan document that prevented assignment of the right to collect benefits under the plan. So there, to the extent those are relevant at all, they're limited to that circumstance, which is very different from here where we have a statutory claim not based in the contract. We're not suing because of a breach of the provision that they had to follow federal law. We're suing under antitrust cause of action. And the only thing that the DSA says about pricing is that the prices will be set forth in invoices. That's it. The only other point I'd like to make is that Pennsylvania law, which governs the DSA to the extent that we get this far, is clear that post-loss assignments are valid notwithstanding anti-assignment clauses. And because that's the law that the parties selected to govern this agreement, if we do get to the point where, or even if you were to find that this is the type of right that's contemplated, which it wasn't, because the parties selected Pennsylvania law, this assignment would still be valid. And there's also authority, including this Court's Bell-Ray decision, that even assignments that violate anti-assignment clauses, which this one don't, are still valid as a difference between the power to assign and the right to assign. All right. Thank you very much. Thank you. Appreciate it very much. And we'll take the matter under advisement and call on the next case. Could I have a moment to be heard on this last point?